Filed 12/30/21  Marriage of B.S. and S.S. CA4/1

## NOT TO BE PUBLISHED IN OFFICIAL REPORTS

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

## COURT OF APPEAL FOURTH APPELLATE DISTRICT

## DIVISION ONE

## STATE OF CALIFORNIA

| | |
|---|---|
| In re the Marriage of B.S and S.S. | D078479 |
| B.S., | |
| Respondent, | (Super. Ct. No. 18FL010584C) |
| v. | |
| S.S., | |
| Appellant. | |

APPEAL from an order of the Superior Court of San Diego County, William J. Howatt, Jr., Temporary Judge.  (Pursuant to Cal. Const., art. VI, § 21.)  Appeal dismissed.

Stephen Temko for Appellant.

Bickford Blado & Botros and Andrew J. Botros for Respondent.

Appellant S.S. appeals from an order denying his request to disqualify an attorney he and respondent B.S. had designated to represent their minor children in their dissolution proceeding.  S.S. contends the family court denied him a fair hearing and due process in various ways, including by deciding the matter without a hearing, taking unverified unsworn

information from the minors' counsel without giving him the right of cross-examination, deciding he had no standing to seek disqualification, and relying on inapposite authority that he had no opportunity to brief or argue. He contends the error is reversible per se.  B.S. responds that S.S. waived the right to appeal from the order and raise these claims of error, in view of a stipulation they had entered into in retaining the privately compensated judge for this matter and S.S.'s consent to the court's determination in the manner that it did.  We agree with B.S.'s waiver claims, and dismiss the appeal.

FACTUAL AND PROCEDURAL BACKGROUND[1]

S.S. and B.S. have three minor children.  In September 2018, B.S., represented by attorney William Benjamin, filed a petition for dissolution and a request for a domestic violence restraining order.  During a hearing in the domestic violence matter (before the Hon. Enrique Camarena), counsel

---

[1]     We address and reject B.S.'s contention that this court may not consider certain letters and e-mails contained in the appellate appendix, namely, an August 12, 2019 letter from minors' counsel to the parties' attorneys, an August 19, 2019 letter from the parties' attorneys to the court, and an August 28, 2019 e-mail from the court to the parties' counsel.  B.S. bases her claim on the fact these items were not filed in the superior court and California Rules of Court, rule 8.124, which provides that the "[f]iling of an appendix constitutes a representation that [it] consists of accurate copies of documents in the superior court file."  (Cal. Rules of Court, rule 8.124(g).)  The temporary judge presiding over the matter specified that he considered the letters when he made his ruling, and he generated the August 28, 2019 e-mail to counsel.  Even if not technically filed, they were "before the superior court" below (see *Aixtron, Inc. v. Veeco Instruments Inc.* (2020) 52 Cal.App.5th 360, 382) and come within the intent of the court rule.  As for a September 30, 2019 e-mail from S.S.'s counsel to the court, opposing counsel and minors' counsel (erroneously referenced in B.S.'s respondent's brief as from the trial court), we need not decide whether it comes within the rule as we do not consider it relevant to the issues before us.

2

advised the court that the parties had agreed to retain attorney Heather Milligan as minors' counsel.

In March 2019, the parties entered into a stipulation to appoint Judge William J. Howatt, Jr. as a privately compensated temporary judge in their matter. By checking form boxes (or leaving them blank) they stipulated that a certified shorthand reporter would be present at all proceedings, including ex parte hearings.[2] The stipulation further provides:

"*If a* [*certified shorthand reporter*] *is present at a proceeding*, all orders and judgments rendered by the privately compensated temporary judge will be appealable in accordance with applicable statutes and rules.

"*If a* [*certified shorthand reporter*] *is not present at a proceeding*, the parties waive their respective rights to the following: (1) statement of decision; (2) motion for new trial; and (3) right to appeal." Judge Camarena signed and entered the order on the stipulation.

In August 2019, S.S. learned that attorney Milligan was representing attorney Benjamin's son in the son's dissolution proceeding. He filed a request for an order to disqualify Milligan as minors' counsel in the dissolution matter before Judge Howatt. In support, he submitted among other things the declaration of a legal malpractice and ethics expert, attorney Deborah Wolfe, for a legal ethics opinion and her views on the matter.[3]

---

[2]     Section 4 of the form, entitled "Certified Shorthand Reporter," provides in part: "A certified shorthand reporter (CSR) □ *will*  □ *will not* be present at all proceedings. [¶]  *Optional:* □ Except at ex parte hearings. The parties checked the "will" box but left the "except at ex parte hearings" box blank.

[3]     The request for order was accompanied by a memorandum of points and authorities, and declarations in support of the request.

Attorney Milligan advised counsel by letter that she did not believe her representation led to the appearance of impropriety, but she felt that S.S.'s motion created it. She stated she was confident she had complied with all local rules, codes, case law, and Rules of Professional Conduct which imposed no affirmative or other obligation to disclose the issues with attorney Benjamin. Milligan stated her representation of the minors "has had absolutely no bearing on the fact that I represent Mr. Benjamin's son." According to Milligan, under California Rules of Court and Rules of Professional Responsibility, she had no disclosure obligation and no conflict as it related to any of her clients in the matter. Though she felt there was "not a clear answer" to the question of her removal, she indicated she thought it might be her duty to pass the matter to another minors' counsel. She continued: "However, I have written this letter to identify the issues and let you both know where I think I stand."

Judge Camarena postponed S.S.'s domestic violence trial pending resolution of the matter involving Milligan.

Several days later, on August 16, 2019, the parties appeared before Judge Howatt on a different request for order (to liquidate assets to pay support arrears), but discussed the disqualification issue. They eventually gave Judge Howatt permission to contact attorney Milligan and discuss the matter with her. The parties also provided Judge Howatt with pleadings. They agreed that if the court requested that Milligan recuse herself, she would do so, and the court would select another qualified attorney to serve as minors' counsel. S.S. and B.S.'s counsel agreed to meet and confer and produce a list of acceptable counsel.

Accordingly, on August 20, 2019, counsel made a joint letter request for appointment of minors' counsel, submitting several names of attorneys for

the court's consideration. S.S.'s counsel informed Judge Howatt that attorney Benjamin wanted the court to speak with attorney Milligan, but that she would "defer to [the court] to determine whether or not it is necessary and/or appropriate to speak to [Milligan] in light of the [request for order] previously filed for her disqualification."

On August 28, 2019, Judge Howatt e-mailed counsel to advise them he had met with attorney Milligan for an hour and a half and "discuss[ed] her situation, her perceptions regarding the children and my questions of her regarding the issues of her remaining on the case or recusing herself or going forward with the [request for order] to disqualify her." Judge Howatt questioned his ability to remove Milligan or appoint new counsel where the child custody orders remained under the jurisdiction of the domestic violence case. The court made itself available for a telephone conference call with counsel.[4]

---

[4] In full, Judge Howatt's e-mail states: "Greeting[s] to you both: I just returned from meeting with . . . Milligan to get clear what her situation is and what input she could provide for the almost one year she has been Minor[s'] Counsel. We spent an hour and one half discussing her situation, her perceptions regarding the children and my questions of her regarding the issues of her remaining on the case or recusing herself or going forward with the [request for order] to disqualify her. I will be asking [my office] to arrange a telephone conference for the three of us to discuss her possible [disqualification] or other alternatives which I may consider. I also have [a] serious question as to whether or not I can proceed to determine removal of Ms. Milligan or appoint new and different Minor[s'] Counsel (one or two) give[n] that apparently all child custody orders remain under the jurisdiction of the [domestic violence] case and not the Dissolution case. I have narrowed down to three names of individuals in whom I would have confidence to proceed with the case as Minor[s'] Counsel but have not yet determined their availability. [¶] I should be available for a telephone conference call after 10 [a.m.] tomorrow, Thursday[,] August 29th and on Friday, August 30th during business hours (9 am to 5 pm). Judge Howatt" S.S. states he is unaware that any telephone conference call took place at the end of August 2020.

Days later, Judge Howatt in a lengthy ruling denied S.S.'s request. The decision and order prefaced: "The above-entitled matter was presented to the court at an ex parte conference in which counsel for [S.S.] made the request that the court relieve attorney Heather Milligan as Minors' Counsel alleging a potential conflict recently realized." Judge Howatt identified and in part summarized the "documents provided and reviewed" by him, including Milligan's August 12, 2019 letter to counsel; counsel's August 19, 2019 joint letter to the court; a declaration of attorney Benjamin filed in opposition to S.S.'s request; the declarations, points and authorities, and lodgments submitted in support of S.S.'s request to disqualify Milligan; and an "unfiled" motion for disqualification prepared by S.S.'s counsel. The court stated it had also "[r]eviewed . . . notebooks of documents in search of any additional information that would be assistive in making a determination of the request to relieve Ms. Milligan" and that "[w]ith the prior permission of Mr. Benjamin and Ms. Galyon . . . interviewed Ms. Milligan for over an hour and one half."

Finding attorney Milligan qualified and that her failure to disclose was an innocent omission if even required by Rules of Professional Conduct, and further finding her removal was not in the children's best interests but could potentially cause them harm, the court in September 2019 ordered that she continue to represent the children. Among other things, the court found no credible evidence of Milligan's bias against or in favor of any party, and S.S.'s assertion that she disliked him was "pure sophistry and mere speculation." It made several other findings in support of its order, including that Milligan represented the children and not the parents.

S.S.'s counsel submitted objections and sought clarification of the court's ruling, which she asserted went "beyond the scope of the pleadings

6

and issue before the Court." Most of the objections and questions were premised on the assertions that S.S.'s request for order had been taken off calendar or that the court made findings on issues not presented by the request.[5]

The court's September 2019 decision and order was filed in December 2020 without further response from the court or counsel. S.S. timely appealed the decision and order.

## DISCUSSION

### *B.S.'s Claims of Waiver*

Our analysis begins and ends with B.S.'s two claims of waiver. She first contends, in part based on the appellate presumption of correctness, that S.S. has waived any claim of error by agreeing and acquiescing to the procedure used by the court. She further contends that S.S. waived the right to appeal the court's order under the stipulation to use Judge Howatt as a privately compensated judge because no certified shorthand reporter was present at the ex parte hearing in which the parties discussed the matter. She asks us not to dismiss the appeal, but to hold that S.S. as a result waived any error he now claims.

In reply, S.S. only briefly addresses the first claim, contending that both counsel believed attorney Milligan had agreed to be relieved from the case and understood the court was strictly looking to appoint a new minors'

---

[5]     Among other questions, counsel asked what jurisdiction the court had to decide any issue beyond selection of the substitute minors' counsel, what basis the court had for making a ruling on actual bias, whether S.S. and B.S. were ever attorney Milligan's clients, and what notice was given to the parties and basis the court had for finding the children would be harmed by Milligan's removal or that her removal would not be in their best interests. Counsel asked when either party had the right to object to any proffer of information or evidence that the court relied on to make its decision.

counsel from the list of attorneys they provided. He responds to the second contention regarding the stipulation by arguing the matter was not a "proceeding" as contemplated by the stipulation. According to S.S., the language of the stipulation—"If a [certified shorthand reporter] is not present at a proceeding"—contemplates an evidentiary hearing, not an oral discussion that occurred without notice or presentation of evidence. He asserts the case cited by B.S. applied the waiver rule to instances where there "actually was an outcome determinative evidentiary 'hearing' that was not reported." Thus, he argues he did not waive his right to appeal the court's decision to retain attorney Milligan as minors' counsel.

The appellate presumption of correctness operates with respect to both of these contentions. It is a " 'cardinal principle of appellate review' " that a lower court order is presumed correct; " ' " 'all intendments and presumptions are indulged to support it on matters as to which the record is silent, and error must be affirmatively shown.' " ' " (*In re Julian R.* (2009) 47 Cal.4th 487, 498-499.) We further " 'apply the general rule "that a trial court is presumed to have been aware of and followed the applicable law. [Citations.]" ' [Citation.] 'This rule derives in part from the presumption of Evidence Code section 664 "that official duty has been regularly performed," ' and thus when 'a statement of reasons is not required and the record is silent, a reviewing court will presume the trial court had a proper basis for a particular finding or order.' " (*Id.* at p. 499.) The official duty presumption includes presuming that the court's minutes are correct and that the duty-holder follows proper procedures. (*Smith v. Smith* (1958) 157 Cal.App.2d 658, 662; *People v. Wader* (1993) 5 Cal.4th 610, 661 [on silent record and "in the absence of any showing that the readbacks did not in fact take place," it

8

was reasonable to presume under Evidence Code section 664 that a court reporter reread testimony to the jury as instructed by the court].)

I. *Waiver of Right to Appeal*

As S.S. recognizes, whether he waived his right to appeal the court's order turns on an interpretation of the stipulation, and particularly the term "proceeding" as used in that document. " 'A stipulation is a contract . . . , and is sometimes said to be governed by the usual rules of construction of other contracts.' " (*Winograd v. American Broadcasting Co.* (1998) 68 Cal.App.4th 624, 632; see also *Chacon v. Litke* (2010) 181 Cal.App.4th 1234, 1252.) A contract must be interpreted as a whole (Civ. Code, § 1641 ["The whole of a contract is to be taken together, so as to give effect to every part, if reasonably practicable, each clause helping to interpret the other"]), so as to give effect to the mutual intention of the parties as it existed at the time of contracting. (Civ. Code, § 1636.)

The stipulation does not define the term "proceeding" but we ascertain its meaning from the whole of the document. This was the reasoning used by the California Supreme Court in *Mountain Air Enterprises, LLC v. Sundowner Towers, LLC* (2017) 3 Cal.5th 744, where the court interpreted the word "proceeding" in an option agreement's attorney fee provision. In *Mountain Air*, the court explained: "The word 'proceeding' can take on 'different meanings in different contexts.' [Citation.] For example, 'proceeding' has been construed narrowly as 'an action or remedy before a court,' and, as broadly as ' "[a]ll the steps or measures adopted in the prosecution or defense of an action." ' " (*Mountain Air*, at p. 754, quoting *Zellerino v. Brown* (1991) 235 Cal.App.3d 1097, 1105; see *Rooney v. Vermont Investment Corp.* (1973) 10 Cal.3d 351, 367; *Lister v. Superior Court* (1979) 98 Cal.App.3d 64, 70.) The *Mountain Air* court explained that "[w]hile the word

9

'proceeding' can generally refer to ' "a mere procedural step that is part of the larger action or special proceeding," ' " in the context of the option agreement there and the surrounding words and phrases in that agreement, it was used in a narrower sense, similar to an action before a court. (*Mountain Air*, at p. 754.) Specifically, the court observed that the word "proceeding" followed the specific term "legal action" and preceded the words "arbitration" and "an action for declaratory relief," and concluded the ejusdem generis doctrine compelled the interpretation it reached. (*Ibid*.)

Here, we reach the opposite conclusion based on the context and surrounding words in the stipulation, which show the parties intended a broad meaning to the word "proceeding." The stipulation contemplates that a proceeding would involve a court reporter, and include "ex parte hearings." In that way, the word is used in its broader general sense, as referring to " ' a mere procedural step that is part of the larger action or special proceeding' " such as a hearing or conference. (*Zellerino v. Brown*, *supra*, 235 Cal.App.3d at p. 1105; *Rooney v. Vermont Investment Corp.*, *supra*, 10 Cal.3d at p. 367; see also Black's Law Dict. (10th ed. 2014) p. 1398, col. 1 ["proceeding" means "[t]he regular and orderly progression of a lawsuit, including *all acts and events* between the time of commencement and the entry of judgment"; "[a]ny procedural means for seeking redress from a tribunal or agency"; "[a]n act or step that is part of a larger action"; and "[t]he business conducted by a court or other official body; *a hearing*," italics added].) We see nothing in the specific provision, or viewing the stipulation in context with other sections, that limits the proceeding to one in which evidence is taken, much less one that is "outcome determinative" as S.S. maintains.

In his order, Judge Howatt recited the procedural background of the dispute, finding that the matter was first discussed at an unrelated hearing:

10

"The issue relating to the request to relieve [attorney] Milligan was first discussed on August 16, 2019[,] subsequent to another matter scheduled to be heard on that date." Judge Howatt also found the "matter was presented to the court at an ex parte conference in which counsel for [S.S.] made the request that the court relieve . . . Milligan as Minors' Counsel alleging a potential conflict recently realized." The order states, "The court was later provided with pleadings and oral discussions." Judge Howatt's ruling then states: "It was determined that if [the] court requests[,] Milligan would recuse herself and agree to being relieved by the court. At that event, it would be anticipated that the court would select another qualified attorney to serve as minors['] counsel for the three children. Mr. Benjamin and Ms. Galyon agreed to meet and confer and produce for the court a list of attorneys who counsel feel could be appointed to be minors['] counsel for the children."

We presume the court's findings accurately state these events, unless S.S. affirmatively demonstrates otherwise. He has not done so. S.S. points to Judge Howatt's August 2019 e-mail indicating the court had "narrowed down to three names of individuals in whom I would have confidence to proceed with the case as Minor[s'] Counsel but have not yet determined their availability." But in the same e-mail, the court stated it had posed "questions [*to attorney Milligan*] *regarding the issues of her remaining on the case or recusing herself or going forward with the* [*request for order*] *to disqualify her*" and would arrange a conference "to discuss her *possible* [*disqualification*] *or other alternatives which I may consider*." The e-mail does not suggest the court had conclusively determined disqualification and replacement with new counsel would occur, but that it was an option, along with Milligan remaining on the case.

11

In short, the record demonstrates that the parties discussed the matter on several occasions in hearings or conferences before the court without a reporter present. Having entered into a stipulation waiving important rights in that situation, it was incumbent on the parties to include a court reporter in proceedings for which they sought to preserve their right to appeal or reach some other agreement to preserve appellate rights on any order made by the court by, for example, agreeing to exclude the proceeding from their stipulation. Under these circumstances, S.S. has waived the right to appeal the court's order on his request to disqualify attorney Milligan.

## II. *Waiver by Acquiescence to Court's Procedure*

Even if we did not hold that S.S. waived his right to appeal from the court's order, we would conclude he forfeited the claims of error he makes because the record, construed in accordance with the above appellate presumptions, shows the parties conceded to the court's consideration of the disqualification issue in the manner it did. The court's order reflects that the parties' attorneys gave the court permission to interview attorney Milligan. As B.S. points out, the court recounted that having been given pleadings and hearing oral discussion, "*it was determined* that *if the court requests*" (italics added), Milligan would recuse herself. The court further recounted: "At that event, it would be anticipated that the court would select another qualified attorney . . . ." The record, construed in the light most favorable to uphold the court's order, reflects the parties' agreement to leave it to the court to decide whether Milligan should be disqualified or recuse herself from the matter. While at some point the court anticipated a telephone conference call with counsel after meeting with Milligan, nothing in the record shows such a call occurred. Because the record is silent as to why that is the case, we presume it was for a reason supporting issuance of the court's order in the

12

absence of a hearing (such as that the parties had no need to schedule any such call).  In short, we agree S.S. waived any claim of error in how the court handled the disqualification matter.

DISPOSITION

The appeal is dismissed.


O'ROURKE, J.

WE CONCUR:


HUFFMAN, Acting P. J.


DO, J.