[No. S159282. Aug. 17, 2009.]

In re JULIAN R., a Person Coming Under the Juvenile Court Law.
THE PEOPLE, Plaintiff and Respondent, v.
JULIAN R., Defendant and Appellant.

## COUNSEL

Lori A. Quick, under appointment by the Supreme Court, for Defendant and Appellant.

Edmund G. Brown, Jr., Attorney General, Dane R. Gillette, Chief Assistant Attorney General, Gerald A. Engler, Assistant Attorney General, Martin S. Kaye, Laurence K. Sullivan and Jeffrey M. Bryant, Deputy Attorneys General, for Plaintiff and Respondent.

## OPINION

**KENNARD, J.**—When a minor within the jurisdiction of the juvenile court is committed to California's Department of Corrections and Rehabilitation, Division of Juvenile Justice, the juvenile court is required to indicate the maximum period of physical confinement. (Welf. & Inst. Code, § 726, subd. (c).)[1] In setting that confinement period, which may be less than, but not more than, the prison sentence that could be imposed on an adult

---

[1] Undesignated statutory references are to the Welfare and Institutions Code.

convicted of the same crime, the court must consider the "facts and circumstances" of the crime. (§ 731, subd. (c).)

This case presents two issues: First, must the juvenile court orally pronounce the juvenile's maximum period of confinement, or will a written statement of that period suffice? Our answer: The latter is sufficient. Second, must the record show that the court complied with section 731, subdivision (c), by considering imposition of a confinement period—shorter than the adult maximum—that might be justified by the "facts and circumstances" of the crime or crimes committed by the juvenile? Our answer: On a silent record, as is the case here, we will presume that the juvenile court performed its statutory duty.

I

The probation report describes the incident leading to Julian R.'s wardship as follows: On June 11, 2006, police officers, responding to a reported carjacking in the parking lot of a fast food restaurant in the City of Salinas, in Monterey County, found two male victims who said they had been assaulted by the occupants of another car. The victims' car had been taken and was later found abandoned nearby.

An hour later, during a routine traffic stop, police officers detained a car near the fast food restaurant. In the car were 17-year-old Julian and five other persons, some of whom fit the description of the carjackers. Radio speakers from, and keys to, the victims' stolen car were found inside the detained car. The officers brought the six suspects to the restaurant's parking lot. There, the suspects were shown to witnesses of the carjacking. Julian was identified as the one who had kicked and punched both victims.

On July 20, 2006, in return for dismissal of the carjacking count, Julian admitted committing two counts of assault against separate victims by means of force likely to produce great bodily injury (Pen. Code, § 245, subd. (a)(1)); each count was subject to a criminal street gang sentence enhancement (Pen. Code, § 186.22, subd. (b)(1)).

By a dispositional order of August 7, 2006, the juvenile court declared Julian to be a ward of the court under section 602 and, rejecting the probation officer's recommendation for a commitment to the Division of Juvenile Justice (formerly the California Youth Authority), the court ordered Julian

committed to the Monterey Youth Center. On February 5, 2007, after Julian tested positive for cocaine use in violation of his probation, he was expelled from the Monterey Youth Center. This led to the filing of a supplemental petition on February 7, 2007, alleging two probation violations—cocaine use and failure to satisfactorily complete the youth center program. The next day, at a detention hearing on that supplemental petition, Julian admitted the probation violations.

On February 26, 2007, at a dispositional hearing on the supplemental petition, the juvenile court concluded that Julian was "too far entrenched in gangs and the criminal lifestyle to be rehabilitated" through locally available services. It then committed him to the Division of Juvenile Justice. The court did not state the maximum confinement that Julian would face, did not mention the maximum term that an adult would face for the same offenses, and did not indicate its consideration of the crimes' facts and circumstances that might justify a shorter confinement. But on a preprinted form (Judicial Council Forms, form JV-665, as rev. Jan. 1, 2007) the court checked a box beside this printed text: "The child is committed to the Department of Corrections and Rehabilitation, Division of Juvenile Justice, and form JV-732, *Commitment to the California Department of Corrections and Rehabilitation, Division of Juvenile Justice,* will be completed and transmitted."

Two days later, on February 28, 2007, the juvenile court signed the required (Cal. Rules of Court, rule 5.805) preprinted commitment form (Judicial Council Forms, form JV-732, as rev. Jan. 1, 2006). As "sustained petitions" the form listed the two felony assault offenses (Pen. Code, § 245, subd. (a)(1)) plus applicable gang enhancements, resulting in a maximum confinement period of 10 years. To that were added two months for a prior offense of fighting in a public place (Pen. Code, § 415, subd. (1)), a misdemeanor. Following the form's printed text "maximum period of confinement," the court inserted "10 years 2 months," which the probation officer had indicated was the maximum period of confinement for an *adult* convicted of the same offenses.

Julian appealed, asserting that the juvenile court erred in its disposition. He contended: (1) the court should have orally pronounced the maximum period of confinement he would face, and (2) the court should have determined whether the facts and circumstances of his crimes warranted a maximum

confinement period shorter than the adult maximum prison term for the same offenses. The Court of Appeal rejected these claims. It held that the juvenile court was not required to orally pronounce the maximum period of confinement that Julian would face. It also held that, although the record did not expressly indicate the juvenile court was aware of its discretionary power to impose a maximum confinement period shorter than the adult maximum, its awareness of that power must be presumed, thus compelling the conclusion that the juvenile court had considered a lesser confinement period. This conclusion was contrary to the one reached by the Court of Appeal in *In re Jacob J.* (2005) 130 Cal.App.4th 429 [30 Cal.Rptr.3d 255], which had held that if the record was silent as to a juvenile court's consideration of a facts and circumstances confinement period, the reviewing court would presume that the juvenile court had failed to consider such a period.

In this case, the Attorney General advised the Court of Appeal that Julian's prior misdemeanor charge of fighting in a public place had been dismissed, reducing the maximum adult term for his offenses to 10 years, and that the principal and subordinate terms for the current two assault offenses had been incorrectly stated on the commitment form. Although a maximum adult term of 10 years for the two assaults was correct, the Attorney General noted that Julian's 10-year confinement period had been incorrectly apportioned between the principal and the subordinate terms for those assaults, each carrying a gang enhancement; correctly calculated, the adult maximum term of imprisonment for the first assault and gang enhancement was eight years, and the maximum term of imprisonment for the second assault and gang enhancement was two years. Given those errors, the Court of Appeal remanded the matter to the juvenile court so it could complete an amended commitment form.

Recognizing the conflict between this case and *In re Jacob. J.*, *supra*, 130 Cal.App.4th 429 concerning the sufficiency of a juvenile court record that is silent as to the appropriate confinement period based on the facts and circumstances of the crime, we granted review to resolve that conflict.

## II

We begin our analysis with a brief overview of the statutory scheme governing commitments to the Division of Juvenile Justice.

■ The jurisdiction of the juvenile court extends to persons who are under 18 years of age when they violate any law defining a crime. (§ 602, subd. (a).) After conducting an investigation, a probation officer may refer a juvenile matter to the prosecuting attorney (§§ 650, 653.5), but no wardship action can commence until the prosecutor has filed a petition on the People's behalf (§§ 650, subd. (c), 681, subd. (a)). The petition states what penal laws were violated and describes the offenses as either felonies or misdemeanors. (§§ 656, subd. (f), 656.1.)

A bifurcated hearing is then held. At the first phase—the jurisdictional hearing—"the juvenile court decides whether the petition concerns a person described in section 602." (*In re Eddie M.* (2003) 31 Cal.4th 480, 487 [3 Cal.Rptr.3d 119, 73 P.3d 1115].) The alleged offense or offenses must be proven "beyond a reasonable doubt supported by evidence . . . legally admissible in the trial of criminal cases . . . ." (§ 701.)

At the second phase—the dispositional hearing—the juvenile court hears "evidence on the question of the proper disposition to be made of the minor." (§ 706.) A wardship determination must be made before the minor can be removed from the physical custody of a parent or guardian. (*In re Eddie M., supra,* 31 Cal.4th at p. 488.)

■ At the dispositional hearing, the juvenile court must consider the social study submitted by the probation officer. (§ 706.) Wards may be committed to a county home, to a ranch or camp, or to a county juvenile hall. (§ 730, subd. (a).) Wards requiring more secure facilities may be committed to the Division of Juvenile Facilities. (§§ 731, subd. (a)(4), 734.) In the latter instance, the ward "may not be held in physical confinement for a period of time in excess of the maximum term of physical confinement set by the court based upon *the facts and circumstances of the matter or matters that brought or continued the ward under the jurisdiction of the juvenile court,* which may not exceed the maximum period of adult confinement as determined pursuant to this section." (§ 731, subd. (c), italics added.)[2] Succinctly put, the juvenile court must consider the crime's relevant "facts and circumstances" in determining whether the minor's maximum commitment period should be equal to or less than the maximum confinement term for an adult. At issue here is whether such a consideration did occur.

---

[2] At the request of the Attorney General, we have judicially noticed official documents of the legislative and the executive branches that comprise the legislative history of Senate Bill No. 459 (2003–2004 Reg. Sess.), which in 2003 amended section 731 by adding a "facts and circumstances" confinement period that is now codified in subdivision (c). (Stats. 2003, ch. 4, § 1.)

# III

## A. *Oral Pronouncement of Maximum Confinement*

■ Section 731 does not direct the juvenile court to orally pronounce the juvenile's maximum period of confinement. Julian acknowledges this. He contends, however, that because the juvenile offender scheme now favors punishment over rehabilitation, it is now more like the adult criminal justice system. Therefore, Julian argues, the commitment procedure for a juvenile ward should parallel the statutory formalities required at an adult felony sentencing hearing by, as relevant here, providing for an oral pronouncement of the period of confinement, accompanied by a statement of reasons. (Pen. Code, § 1170, subd. (b); Cal. Rules of Court, rule 4.406(a), (b)(2), (4).) We disagree.

■ We begin with an examination of section 202. In that statute, enacted in 1984, the Legislature has expressed its concern for "the protection and safety of the public and each minor under the jurisdiction of the juvenile court." (§ 202, subd. (a), added by Stats. 1984, ch. 756, § 2, p. 2726.) The statute requires, as it has since 1984, that juvenile offenders "receive care, treatment, and guidance consistent with their best interest," and it states that such "guidance may include punishment that is consistent with the rehabilitative objectives of this chapter." (§ 202, subd. (b).) In 1999, although the Legislature deleted from the statute a list of punitive sanctions available to the juvenile court (Stats. 1999, ch. 997, § 1.1, p. 7588) it retained language, which still appears, that " 'punishment' means the imposition of sanctions," and that punishment "does not include retribution" (§ 202, subd. (e)). Contrary to Julian's contention, the Legislature has not abandoned the traditional purpose of rehabilitation for juvenile offenders and replaced it with punishment as a form of retribution. Juvenile proceedings continue to be primarily rehabilitative, disallowing punishment in the form of retribution. (*In re Eddie M., supra*, 31 Cal.4th at p. 507.)

■ Significant differences between the juvenile and adult offender laws underscore their different goals: The former seeks to rehabilitate, while the latter seeks to punish. The determinate sentencing law, which governs sentencing of adult offenders who have committed a crime for which a "statute specifies three possible terms," requires the trial court to choose a set term (Pen. Code, § 1170, subd. (b))—a lower, middle, or upper term—from the adult tripartite sentencing scheme. The determinate sentencing law "provides for *fixed terms* designed to punish." (*In re Christian G.* (2007) 153

Cal.App.4th 708, 715 [63 Cal.Rptr.3d 215], italics added.) In contrast, juveniles are committed "for *indeterminate terms* designed to rehabilitate." (*Ibid.*, italics added.) And unlike an adult offender who commits a felony and serves a set term, a juvenile offender who commits a felony and is committed to the Division of Juvenile Justice is ordinarily not held beyond the age of 25. (§ 1771.)

▪ In light of these significant differences between juvenile offender laws and adult offender laws, we reject Julian's contention that, as in adult criminal sentencing proceedings, in juvenile offender proceedings there needs to be an oral pronouncement of the juvenile's maximum period of confinement, accompanied by a statement of reasons.[3]

▪ Insisting that the juvenile court must at the dispositional hearing make an oral pronouncement of the confinement period, Julian points to certain language in section 726's subdivision (c) and in rule 5.795(b) of the California Rules of Court as indicative of an intent to require such an oral pronouncement. The statute provides that the court's "order shall specify" the maximum length of physical confinement (§ 726, subd. (c)); the rule directs the juvenile court to "specify and note in the minutes the maximum period of confinement under section 726" (Cal. Rules of Court, rule 5.795(b)). In Julian's view, "specify" means to *orally* pronounce. That is only one of the word's meanings, however. The dictionary defines "specify" as "name or state explicitly or in detail." (Webster's 7th New Collegiate Dict. (1970) p. 839.) That definition would encompass an oral pronouncement. But it is not the only definition. According to the same dictionary, "specify" also means "to include as an item in a specification." (*Ibid.*) A "specification," which is "a plan or proposal for something" (*ibid.*), is frequently a written document. Under that definition, a juvenile court's written commitment order would comply with the court's statutory duty to "specify" (§ 726, subd. (c)) the minor's maximum confinement period.

Finally, Julian argues that even though the statutory scheme (§§ 726, subd. (c), 731, subd. (c)) does not compel an oral pronouncement of the juvenile's maximum period of confinement, nonetheless we should impose such a requirement "pursuant to our supervisory authority over state [court]

---

[3] Julian contends that due process requires a statement of reasons. He notes that the determinate sentencing law, which governs adult offenders, requires a trial court to "state the reasons for its sentence choice on the record." (Pen. Code, § 1170, subd. (c).) According to Julian, requiring such a statement of reasons at a juvenile court's dispositional hearing would ensure that the court used reliable sentencing information in exercising its discretion to impose either a physical confinement period not exceeding the maximum adult term or a shorter period of confinement based on the "facts and circumstances" of the crime. Because Julian did not argue this claim in the Court of Appeal or in his petition for review he is precluded from now raising it. (Cal. Rules of Court, rules 8.500(c)(1), 8.504(b)(1).)

procedure." (*In re Podesto* (1976) 15 Cal.3d 921, 938 [127 Cal.Rptr. 97, 544 P.2d 1297]; see *People v. Galland* (2008) 45 Cal.4th 354, 368 [86 Cal.Rptr.3d 841, 197 P.3d 736].) He contends that unless the juvenile court is required to make such an oral pronouncement, with a statement of reasons, it will be difficult for a reviewing court to determine whether the juvenile court has indeed considered a period of confinement based on the crime's facts and circumstances. That concern is overstated, especially in light of the recent revision of the Judicial Council's commitment form. As of January 1, 2009, that form requires the juvenile court both to state the duration of the maximum period of confinement and to acknowledge that it has "considered the individual facts and circumstances of the case in determining the maximum period of confinement." (Judicial Council Forms, form JV-732, as rev. Jan. 1, 2009, Commitment to the Cal. Department of Corrections and Rehabilitation, Division of Juvenile Justice, item No. 8, p. 2.)

### B. *Juvenile Court's Consideration of Crime's "Facts and Circumstances"*

■ Section 731 sets two ceilings on the period of physical confinement to be imposed. The statute permits the juvenile court in its discretion to impose either the equivalent of the "maximum period of imprisonment that could be imposed upon an adult convicted of the offense or offenses" committed by the juvenile (§ 731, subd. (c)) or some lesser period based on the "facts and circumstances of the matter or matters that brought or continued" the juvenile under the court's jurisdiction (*ibid.*).

Here, the juvenile court determined that the maximum adult sentence for Julian's offenses—two counts of assault—was imprisonment for 10 years. But it did not state on the record that it had considered the crimes' "facts and circumstances" that might justify a confinement period below the maximum adult prison term for the same offenses. Julian interprets the record's silence on this point as an indication that the juvenile court never considered imposing a confinement period shorter than the maximum adult term. Therefore, according to Julian, a reviewing court must presume from the record's silence that the juvenile court was either unaware of, or failed to perform, its statutory duty to consider that the "facts and circumstances" might warrant a confinement period shorter than the adult maximum term.

■ But such a presumption would, as the Court of Appeal here concluded, require the reviewing court "to ignore a cardinal principle of appellate review": A " ' "judgment or order of the lower court is *presumed correct*[, and a]ll intendments and presumptions are indulged to support it on

matters as to which the record is silent, and error must be affirmatively shown." ' [Citation.]" As this court has stated, "we apply the general rule 'that a trial court is presumed to have been aware of and followed the applicable law. [Citations.]' " (*People v. Stowell* (2003) 31 Cal.4th 1107, 1114 [6 Cal.Rptr.3d 723, 79 P.3d 1030].) "This rule derives in part from the presumption of Evidence Code section 664 'that official duty has been regularly performed,' " and thus when "a statement of reasons is not required and the record is silent, a reviewing court will presume the trial court had a proper basis for a particular finding or order." (*Ibid.*)

▇▇▇ Here, the juvenile court did set a maximum confinement period by completing the appropriate Judicial Council commitment form. In the circumstances of this case, we presume, as the Court of Appeal did, that (1) the court exercised its discretion in setting a maximum period of physical confinement that was measured against both the ceiling set by the maximum adult prison term and a possibly lower ceiling set by the relevant "facts and circumstances" (§ 731, subd. (c)), and (2) the court determined that Julian's appropriate confinement period was a period equal to the maximum adult term.[4]

As we noted at the outset, this case presents a conflict with the decision by the Court of Appeal in *In re Jacob J., supra*, 130 Cal.App.4th 429. There, as here, the record did not indicate that the juvenile court had considered whether, based on the facts and circumstances of the juvenile's offense, a confinement period shorter than the maximum adult sentence imposed for the same crime was called for. The court acknowledged that section 731 does not require the juvenile court to recite "the facts and circumstances" on which it relies or to discuss "their relative weight." (*In re Jacob J.*, at p. 438.) Because the record did not reflect the juvenile court's consideration of the crimes' "facts and circumstances" that might justify a confinement period shorter than the adult maximum term, the Court of Appeal reversed the judgment and remanded the matter to the juvenile court. (*Ibid.*) Unlike the Court of Appeal in this case, the Court of Appeal in *In re Jacob J.* failed to apply the general rule that " 'a trial court is presumed to have been aware of and followed the applicable law. [Citations.]' " (*People v. Stowell, supra*, 31 Cal.4th at p. 1114.) That was error. To the extent that *In re Jacob J., supra*, 130 Cal.App.4th 429, 438 is inconsistent with this opinion, we disapprove it.

---

[4] It would have been better practice if the juvenile court had stated on the record that it had considered, based on the "facts and circumstances" of Julian's offenses, a confinement period less than the prison term for an adult convicted of the same offenses (§ 731, subd. (c)), and that in the exercise of its discretion it had decided against such a shorter confinement. In light of newly revised Judicial Council form JV-732 *requiring* the juvenile court to acknowledge its consideration of the crime's facts and circumstances (p. 498, *ante*), in the future a court's exercise of its discretion will be evident.

## IV. Conclusion and Disposition

The Court of Appeal here remanded the matter to the juvenile court so it could correct certain errors. (See p. 494, *ante.*) We agree that a remand is appropriate. On remand, the juvenile court is to complete Judicial Council form JV-732, as revised January 1, 2009, acknowledging that the court has considered the facts and circumstances of the offenses in determining the maximum period of Julian's physical confinement.

The judgment of the Court of Appeal is affirmed.

George, C. J., Baxter, J., Werdegar, J., Chin, J., Moreno, J., and Corrigan, J., concurred.