Filed 4/29/26  P. v. Howard CA2/5

**NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION FIVE

| | |
|---|---|
| THE PEOPLE,<br><br>　　　Plaintiff and Respondent,<br><br>　　v.<br><br>CARL VINCENT HOWARD,<br><br>　　　Defendant and<br>Appellant. | B342964<br><br>(Los Angeles County<br>Super. Ct. No. YA058571) |

　　　APPEAL from a judgment of the Superior Court of Los Angeles County.  Altus W. Hudson, Judge.  Reversed and remanded with directions.

　　　Teresa Biagini, under appointment by the Court of Appeal, for Defendant and Appellant.

Rob Bonta, Attorney General, Charles C. Ragland, Chief Assistant Attorney General, Susan Sullivan Pithey, Senior Assistant Attorney General, Scott A. Taryle, Supervising Deputy Attorney General, and Sophia A. Lecky, Deputy Attorney General, for Plaintiff and Respondent.

\* \* \* \* \* \*

In 2024, the trial court purported to conduct a "full resentencing" of Carl Vincent Howard (defendant) pursuant to Penal Code section 1172.75,[1] but declined to dismiss a previously imposed 25 year-to-life firearm enhancement, citing its desire not to "get involved in changing the sentence of the original sentencing court" and not to usurp "the role of the parole board" in assessing when defendant was ready for release.  Because these rationales reflect an abdication of the court's duty to exercise its sentencing discretion, we must reverse and remand for the court to exercise that discretion at a new, full resentencing.  (E.g., *People v. Bigelow* (1984) 37 Cal.3d 731, 744 (*Bigelow*); *Dickson, Carlson & Campillo v. Pole* (2000) 83 Cal.App.4th 436, 449 ["The failure to exercise discretion is an abuse of discretion"].)  Our holding in no way suggests how the trial court should exercise its discretion on remand.

---

[1]	All further statutory references are to the Penal Code unless otherwise indicated.

## FACTUAL AND PROCEDURAL BACKGROUND

### I.  Underlying Crimes[2]

Just six weeks after his release from prison in March 2003, defendant met up with his friend Brian Brown.  Defendant was then on felony parole, and thus not permitted to carry a firearm; he carried one anyway.  Brown and defendant drove around in Brown's PT Cruiser, stopping at various places.  At some point, an argument broke out between defendant and Brown. Defendant pulled out his gun, ordered Brown out of the car, and proceeded to shoot him three times—once in the face, once in the back of the neck, and once in the back of the head.

Defendant drove off in the PT Cruiser, leaving Brown's body in a parking lot.  An eyewitness to the shooting called law enforcement, to report the incident and to inform them that the shooter had driven off in a PT Cruiser.  The next day, law enforcement officers spotted defendant in the PT Cruiser and turned on their patrol car's lights and siren.  Defendant sped off, leading the officers on a "long, dangerous high-speed chase" through residential neighborhoods and on freeways before abandoning the vehicle and fleeing on foot.

Defendant admitted discarding his firearm after the shooting and disposing of Brown's slippers as well as documents related to the PT Cruiser; however, Brown's wallet, watch, money, credit cards, and driver's license were never recovered.

### II.  Prosecution, Conviction, and Sentencing

In June 2004, the People charged defendant with (1) first degree murder (§ 187), (2) carjacking (§ 215, subd. (a)), (3)

---

[2]   We draw these facts from our prior unpublished opinion in *People v. Howard* (Sep. 12, 2005, B179243) [nonpub. opn.], of which we take judicial notice (Evid. Code, §§ 459, 452, subd. (c)).

3

robbery (§ 211), and (4) evading an officer with willful disregard, as a misdemeanor (Veh. Code, § 2800.2, subd. (a)). The People alleged that defendant personally and intentionally discharged a firearm causing great bodily injury or death (§ 12022.53, subd. (d)), and further alleged that defendant had served a prior prison term (§ 667.5, subd. (b)) for his 2002 conviction for unlawful taking or driving a vehicle without consent (Veh. Code, § 10851).

A jury convicted defendant of the four above-enumerated charges. After defendant waived his right to a jury trial on the prior conviction allegation, the trial court subsequently found it to be true.

The trial court imposed a prison sentence of 51 years to life, plus 180 days in county jail. Specifically, the court imposed a prison sentence of 25 years to life for the murder, plus a consecutive term of 25 years to life for the firearm enhancement, plus a consecutive term of one year for the prior prison term, plus a consecutive 180 days in the county jail for misdemeanor evading a peace officer. The court stayed the five-year and three-year sentences it imposed on the carjacking and robbery counts, respectively, under section 654. The court imposed a $10,000 restitution fine pursuant to section 1202.4, subdivision (b); imposed but stayed a $10,000 parole revocation fine pursuant to section 1202.45; and imposed a $20 court security fee pursuant to section 1465.8, subdivision (a)(1). Defendant was granted a total of 526 days of custody credit.[3]

We affirmed the judgment in an unpublished opinion. (*People v. Howard* (Sep. 12, 2005, B179243) [nonpub. opn.].)

---

[3] We grant defendant's request to augment the record to include the October 5, 2004 sentencing transcript.

4

## III. The Resentencing Proceedings

In December 2022, defendant filed a petition seeking a full resentencing pursuant to Senate Bill No. 483 (2021-2022 Reg. Sess.) (Stats. 2021, ch. 728, § 3) because the California Department of Corrections and Rehabilitation (the CDCR) had identified him as eligible for relief under that new law.

After the trial court issued a minute order in December 2023 purporting to "strik[e]" the one-year prior prison term enhancement as "legally invalid," defendant in November 2024 moved the trial court to conduct a full resentencing hearing at which it could consider, among other things, whether to dismiss the 25 year to life firearm enhancement as well as strongly consider "the trauma he suffered in childhood." As exhibits, he attached a letter conveying his remorse, support letters from friends, and laudatory letters from two Corrections officers. The People reaffirmed the propriety of the trial court's order dismissing the one-year prior prison term enhancement, but opposed any further reduction in sentence; the People attached excerpts of defendant's prison disciplinary records, which detailed discipline for batteries upon other inmates in January 2023 and April 2020, involvement in a May 2021 prison riot, behavior which could lead to violence in September 2019, distribution of heroin in July 2016, and possession of an object with a metal tip in April 2016.

On November 26, 2024, the court conducted a resentencing hearing. After hearing argument, the court reaffirmed the prior dismissal of the prior prison term enhancement. The court then ruled that it would be "leav[ing] all other terms and conditions in effect." The court explained that it had "review[ed]" defendant's prison records (which included both "his negative conduct" as

5

well as "his positive conduct"), but elected not to further modify defendant's original sentence (1) because "th[is] court will not get involved in changing the sentence of the original sentencing court" (as it did not "presume to know the trial better, know the facts better," or know "what the appropriate sentence is"), and (2) because "this court believes" that examining whether defendant was "making progress towards rehabilitation" and "the decision as to whether [defendant] should be paroled" was "the role of the parole board" and "best left up to the parole board." The court also noted, at the very end of the hearing, that it found defendant "unsuitable as a further threat to society."

## IV. Appeal

Defendant filed this timely appeal.

## DISCUSSION

Defendant argues that the trial court erred in (1) not dismissing the 25 years-to-life firearm enhancement; (2) re-imposing the restitution fine, the parole revocation fine, and the $20 court operations assessment fee; and (3) calculating his actual custody credits.

## I. Remand Is Necessary

Where, as here, a defendant was originally sentenced for a prior prison term enhancement that arose from a conviction that was not a "sexually violent offense," that defendant is entitled to a "full resentencing" where that enhancement is to be stricken *and* where the trial court is to "apply any other changes in law that reduce sentences or provide for judicial discretion so as to eliminate disparity of sentences and to promote uniformity of sentencing." (§§ 1172.75, subds. (a), (c), (d)(1)-(2), 667.5, subd. (b); *People v. Superior Court (Guevara)* (2025) 18 Cal.5th 838, 875 ["section 1172.75 by its express terms . . . provide[s] for a full

6

resentencing"].)  The law regarding the 25 years-to-life firearm enhancement has changed since defendant's original sentencing hearing in 2004:  At that time, a trial court did not have discretion to dismiss that enhancement; since January 1, 2018, trial courts have had the power to dismiss firearm enhancements under section 12022.53 entirely or to substitute a lesser firearm enhancement in their place.  (§ 12022.53, subd. (h); *People v. Tirado* (2022) 12 Cal.5th 688, 695-696.)

Although we review a trial court's discretionary sentencing decisions for an abuse of discretion (*People v. Carmony* (2004) 33 Cal.4th 367, 374), a trial court abuses its discretion when it refuses to exercise that discretion (*Bigelow*, *supra*, 37 Cal.3d at p. 744).  That is what happened here:  What was supposed to be a full resentencing was merely a reaffirmation of a prior sentence and an abdication of discretionary decision-making to others whom the trial court believed were (or had been) better suited to the task.

The trial court explained that it was not revisiting the 25 years-to-life firearm enhancement in defendant's case because it did not want to "get involved in changing the sentence of the original sentencing court" because the original sentencing court knew the facts and "the appropriate sentence" better.  Yet section 1172.75 explicitly charges courts conducting a full resentencing to "apply . . . changes in law that . . . provide for judicial discretion."  (§ 1172.75, subd. (d)(2).)  In other words, section 1172.75 *requires* trial courts to "get involved" where, as here, the governing law has changed in a way that makes a lower sentence a possibility.  What is more, section 1172.75 also enables a trial court to "consider postconviction factors" (§ 1172.75, subd. (d)(3)), which would be given no weight were a trial court to defer to the

original sentence entered *before* any postconviction conduct comes to pass. (Accord, *People v. Rogers* (2025) 108 Cal.App.5th 340, 361 [section 1172.75, subdivision (d)(3), "promotes an examination of information and circumstances that did not exist at the time of the original sentencing which, in turn, evinces an intent that the resentencing court must sentence anew under present circumstances"].)

The trial court also indicated that it was not revisiting the 25 years-to-life firearm enhancement because, in its view, the Board of Parole Hearings was better suited than the court to assess defendant's "progress towards rehabilitation" and, by implication, his dangerousness. Although some courts have held that a trial court, when looking to the public safety risk that would arise should a defendant be released sooner due to the dismissal of an enhancement at a full resentencing, "should . . . take into account" that the defendant's "release from prison [may be] contingent on review by the Board of Parole Hearings" (*People v. Gonzalez* (2024) 103 Cal.App.5th 215, 228), those courts have not held that a trial court should avoid assessing dangerousness *at all* because the Board will eventually do so. As noted above, section 1172.75 entrusts *trial courts* with evaluating "postconviction factors"—which includes conduct bearing on dangerousness as well as rehabilitation—during a full resentencing. (§ 1172.75, subd. (d)(3).)

To be sure, the trial court mentioned that it had reviewed defendant's prison discipline record and, at the very end of the resentencing hearing, made a finding that defendant "is unsuitable as a further threat to society." The People assert that this verbiage closely approximates the finding that would justify the refusal to dismiss an enhancement under section 1385,

8

subdivision (c) (see § 1385, subd. (c)(2) [examining whether "dismissal of [an] enhancement would endanger public safety"]), and that we must indulge all presumptions that the trial court was properly applying the law (*In re Julian R.* (2009) 47 Cal.4th 487, 498-499). But the presumption of regularity is rebutted when a trial court affirmatively indicates that it is *not* following the law (*People v. Carter* (2014) 227 Cal.App.4th 322, 324), and a court's consideration of impermissible factors—in this case, the court's express deference to the original sentencing court and to the Board of Parole Hearings at the expense of the exercise of its own discretion—constitutes such an affirmative indication. (Accord, *People v. Panozo* (2021) 59 Cal.App.5th 825, 839 ["where the record is not silent, but rather is 'at the very least ambiguous as to whether the court understood its [statutory] obligation . . .,' remand is appropriate"].)

## II. Directions Upon Remand

Upon remand, the court is to conduct the full resentencing mandated by section 1172.75. At that time, the court should calculate defendant's actual custody credits from the date of arrest through the date of resentencing. (*People v. Buckhalter* (2001) 26 Cal.4th 20, 29 [defendant entitled to all actual custody days since arrest, including date of resentencing]; §§ 2900.1, 2900.5, subd. (d).) Defendant's post-briefing request to augment the record also included a minute order dated February 26, 2026, reflecting that the court struck the restitution and parole revocation fines, and imposed but stayed the court operations fee. These actions render moot the challenges to these fines and fees that defendant presented in his briefing.

9

## DISPOSITION

Defendant's sentence is vacated and the matter is remanded to the trial court to conduct a full resentencing pursuant to section 1172.75. We express no opinion on how the trial court is to exercise its discretion during that resentencing.

<u>NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS</u>.


_____, P. J.
HOFFSTADT


We concur:


_____, J.
BAKER


_____, J.
MOOR